1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11  LANCE WILLIAMS,                    No.  2:15-cv-0782 DB P

12            Plaintiff,

13      v.                             ORDER AND FINDINGS AND
                                       RECOMMENDATIONS
14  ERIC ARNOLD, et al.,

15            Defendants.

16

17         Plaintiff is a state prisoner proceeding pro se and in forma pauperis with a civil rights

18  action under 42 U.S.C. § 1983.  Plaintiff alleges a violation of his Eighth Amendment rights when

19  a mechanical door was closed on him.  Before the court is defendants' motion for summary

20  judgment based on plaintiff's failure to exhaust his administrative remedies before filing suit.  For

21  the reasons set forth below, the court recommends defendants' motion be granted and this case be

22  dismissed without prejudice.

23                              **BACKGROUND**

24  **I.      Allegations of the Complaint**

25         This case is proceeding on plaintiff's first amended complaint filed here on October 28,

26  2015.  (ECF No. 14.)  Plaintiff alleges that on the afternoon of March 6, 2015 defendant Romero

27  was the officer in the control booth for the sliding door at the front entrance of building 1 at

28  California State Prison – Solano ("CSP-Solano").  Plaintiff states that he and three other inmates

1

1    were waiting for the door to open.  Defendant Romero opened the door just far enough for each

2    inmate to squeeze through.  When plaintiff attempted to get through the door, Romero closed the

3    door, trapping plaintiff between the sliding door and the door frame.  After about 7 to 10 seconds,

4    plaintiff was able to wiggle free.  Plaintiff was in pain and yelled to Romero that he needed

5    medical help.  Romero refused and threatened to send plaintiff to the "hole."  (First Am. Compl.

6    (ECF No. 14 at 1, 3-4).)

7        Plaintiff stated he was in severe pain but feared contacting medical staff due to Romero's

8    threat.  He returned to his cell.  Later, defendant La replaced Romero and continued to refuse

9    plaintiff medical care.  That evening, defendant Abarra returned to the building and plaintiff told

10   him about the incident and his pain.  Abarra initially refused to contact medical staff.  Eventually,

11   Abarra contacted a nurse who told him that plaintiff could not be seen at that time because his

12   injuries were not "life threatening."  She advised plaintiff to fill out a medical request form.   (Id.

13   at 4-6.)

14       Plaintiff seeks declaratory relief and compensatory and punitive damages.

15   **II.     Procedural Background**

16       Plaintiff' original complaint, signed April 8, 2015, was filed here on April 10, 2015.  On

17   October 28, 2015, plaintiff filed his first amended complaint.  On screening, the court found

18   plaintiff's first amended complaint appeared to state cognizable claims against defendant Romero

19   for excessive use of force in violation of the Eighth Amendment and against defendants Romero,

20   Abarra, and La for deliberate indifference to his medical needs in violation of the Eighth

21   Amendment.  (Apr. 12, 2016 Order (ECF No. 16).)

22       Defendants answered the complaint on July 18, 2016.  (ECF No. 20.)  On July 29, 2016,

23   defendants filed the present motion for summary judgment.  (ECF No. 24.)

24                          **MOTION FOR SUMMARY JUDGMENT**

25       Defendants contend that plaintiff failed to exhaust his administrative remedies. Plaintiff

26   responds that the appeal process was made unavailable to him and therefore exhaustion should be

27   excused.

28   ////

2

1    **I.      Legal Standards**

2         **A. Summary Judgment Standards under Rule 56**

3         Summary judgment is appropriate when the moving party "shows that there is no genuine

4    dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R.

5    Civ. P. 56(a).  Under summary judgment practice, the moving party "initially bears the burden of

6    proving the absence of a genuine issue of material fact."  In re Oracle Corp. Sec. Litigation, 627

7    F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).  The

8    moving party may accomplish this by "citing to particular parts of materials in the record,

9    including depositions, documents, electronically stored information, affidavits or declarations,

10   stipulations (including those made for purposes of the motion only), admissions, interrogatory

11   answers, or other materials" or by showing that such materials "do not establish the absence or

12   presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to

13   support the fact."  Fed. R. Civ. P. 56(c)(1)(A), (B).

14        When the non-moving party bears the burden of proof at trial, "the moving party need

15   only prove that there is an absence of evidence to support the nonmoving party's case."  Oracle

16   Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325.).  See also Fed. R. Civ. P. 56(c)(1)(B).

17   Indeed, summary judgment should be entered, after adequate time for discovery and upon motion,

18   against a party who fails to make a showing sufficient to establish the existence of an element

19   essential to that party's case, and on which that party will bear the burden of proof at trial.  See

20   Celotex, 477 U.S. at 322.  "[A] complete failure of proof concerning an essential element of the

21   nonmoving party's case necessarily renders all other facts immaterial."  Id.  In such a

22   circumstance, summary judgment should be granted, "so long as whatever is before the district

23   court demonstrates that the standard for entry of summary judgment . . . is satisfied."  Id. at 323.

24        If the moving party meets its initial responsibility, the burden then shifts to the opposing

25   party to establish that a genuine issue as to any material fact actually does exist.  See Matsushita

26   Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to establish the

27   existence of this factual dispute, the opposing party typically may not rely upon the allegations or

28   denials of its pleadings but is required to tender evidence of specific facts in the form of

affidavits, and/or admissible discovery material, in support of its contention that the dispute exists.  See Fed. R. Civ. P. 56(c)(1); Matsushita, 475 U.S. at 586 n.11.  The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial."  T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (citations omitted).

"In evaluating the evidence to determine whether there is a genuine issue of fact," the court draws "all reasonable inferences supported by the evidence in favor of the non-moving party."  Walls v. Central Contra Costa Transit Auth., 653 F.3d 963, 966 (9th Cir. 2011).  It is the opposing party's obligation to produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation omitted).

### B.  Exhaustion Standards

The Prison Litigation Reform Act of 1995 (PLRA) mandates that "[n]o action shall be brought with respect to prison conditions under section 1983 . . . or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative

1   remedies as are available are exhausted." 42 U.S.C. § 1997e(a).  Compliance with deadlines and

2   other critical prison grievance rules is required to exhaust.  Woodford v. Ngo, 548 U.S. 81, 90

3   (2006) (exhaustion of administrative remedies requires "using all steps that the agency holds out,

4   and doing so properly").  "[T]o properly exhaust administrative remedies prisoners 'must

5   complete the administrative review process in accordance with the applicable procedural rules,'—

6   rules that are defined not by the PLRA, but by the prison grievance process itself." Jones v.

7   Bock, 549 U.S. 199, 218 (2007) (quoting Woodford, 548 U.S. at 88); see also Marella v. Terhune,

8   568 F.3d 1024, 1027 (9th Cir. 2009) ("The California prison system's requirements 'define the

9   boundaries of proper exhaustion.'") (quoting Jones, 549 U.S. at 218).

10      Although "the PLRA's exhaustion requirement applies to all inmate suits about prison

11  life," Porter v. Nussle, 534 U.S. 516, 532 (2002), the requirement for exhaustion under the PLRA

12  is not absolute, Albino v. Baca, 747 F.3d 1162, 1172-72 (9th Cir. 2014) (en banc).  As explicitly

13  stated in the statute, "[t]he PLRA requires that an inmate exhaust only those administrative

14  remedies 'as are available.'" Sapp v. Kimbrell, 623 F.3d 813, 822 (9th Cir. 2010) (quoting 42

15  U.S.C. § 1997e(a)) (administrative remedies plainly unavailable if grievance was screened out for

16  improper reasons); see also Nunez v. Duncan, 591 F.3d 1217, 1224 (9th Cir. 2010) ("Remedies

17  that rational inmates cannot be expected to use are not capable of accomplishing their purposes

18  and so are not available."). "We have recognized that the PLRA therefore does not require

19  exhaustion when circumstances render administrative remedies 'effectively unavailable.'" Sapp,

20  623 F.3d at 822 (citing Nunez, 591 F.3d at 1226); accord Brown v. Valoff, 422 F.3d 926, 935

21  (9th Cir. 2005) ("The obligation to exhaust 'available' remedies persists as long as some remedy

22  remains 'available.' Once that is no longer the case, then there are no 'remedies . . . available,'

23  and the prisoner need not further pursue the grievance.").

24      Dismissal of a prisoner civil rights action for failure to exhaust administrative remedies

25  must generally be brought and decided pursuant to a motion for summary judgment under Rule

26  56, Federal Rules of Civil Procedure.  Albino, 747 F.3d at 1168.  Defendants bear the burden of

27  proving that there was an available administrative remedy that the prisoner did not exhaust.  Id. at

28  1172.  If defendants meet this burden, then the burden shifts to plaintiff to "come forward with

1  evidence showing that there is something in his particular case that made the existing and

2  generally available administrative remedies effectively unavailable to him."  Id.  In adjudicating

3  summary judgment on the issue of exhaustion, the court must view all the facts in the record in

4  the light most favorable to plaintiff.  Id. at 1173.

5        **C.  California's Inmate Appeal Process**

6      In California, prisoners may appeal "any policy, decision, action, condition, or omission by

7  the department or its staff that the inmate or parolee can demonstrate as having a material adverse

8  effect upon his or her health, safety, or welfare."  Cal. Code Regs. tit. 15, § 3084.1(a).  Inmates in

9  California proceed through three levels of appeal to exhaust the appeal process: (1) formal written

10  appeal on a CDC 602 inmate appeal form; (2) second level appeal to the institution head or

11  designee; and (3) third level appeal to the Director of the California Department of Corrections

12  and Rehabilitation ("CDCR").  Cal. Code Regs. tit. 15, § 3084.7.  Under specific circumstances,

13  the first level review may be bypassed.  Id.  The third level of review constitutes the decision of

14  the Secretary of the CDCR and exhausts a prisoner's administrative remedies.  See id.

15  §3084.7(d)(3).

16      Since 2008, medical appeals have been processed at the third level by the Office of Third

17  Level Appeals for the California Correctional Health Care Services.  A California prisoner is

18  required to submit an inmate appeal at the appropriate level and proceed to the highest level of

19  review available to him.  Butler v. Adams, 397 F.3d 1181, 1183 (9th Cir. 2005); Bennett v. King,

20  293 F.3d 1096, 1098 (9th Cir. 2002).  In submitting a grievance, an inmate is required to "list all

21  staff members involved and shall describe their involvement in the issue."  Cal. Code Regs. tit.

22  15, § 3084.2(3).  Further, the inmate must "state all facts known and available to him/her

23  regarding the issue being appealed at the time," and he or she must "describe the specific issue

24  under appeal and the relief requested."  Cal. Code Regs. tit. 15, §§ 3084.2(a)(4).  An inmate has

25  thirty calendar days to submit his or her appeal from the occurrence of the event or decision being

26  appealed, or "upon first having knowledge of the action or decision being appealed."  Cal. Code

27  Regs. tit. 15, § 3084.8(b)**.**

28  ////

1    ## II.    Material Facts

2        Defendants filed a Statement of Undisputed Facts ("DSUF") as required by Local Rule

3    260(a).  (ECF No. 24-3.)  Plaintiff's filing in opposition to defendants' motion for summary

4    judgment fails to technically comply with Local Rule 260(b).  Rule 260(b) requires that a party

5    opposing a motion for summary judgment "shall reproduce the itemized facts in the Statement of

6    Undisputed Facts and admit those facts that are undisputed and deny those that are disputed,

7    including with each denial a citation to the particular portions of any pleading, affidavit,

8    deposition, interrogatory answer, admission, or other document relied upon in support of that

9    denial."

10        Plaintiff filed a "Statement 'DISPUTING' defendants statement of undisputed facts." ("Pl.'s

11    Stmt." (ECF No. 31 at 1-2).)  Plaintiff also filed an "Opposition Rebuttal to defendants motion for

12    summary judgment and plaintiff's disputed facts."  ("Pl.'s Oppo." (ECF No. 31 at 3-8).)

13    Therein, plaintiff does not reproduce the itemized facts from the DSUF.  However, plaintiff does

14    list the items from the DSUF by number and state whether or not he disputes them.

15        Plaintiff disputes almost all of defendants' DSUF.  In light of plaintiff's pro se status, the court

16    has reviewed plaintiff's filings in an effort to discern whether any of these disputes involve

17    genuine issues.  A review of plaintiff's filings and of the evidence provided by the parties, reveals

18    the following material facts which are not subject to genuine dispute.

19    ### A.    Parties

20        At all relevant times, plaintiff was incarcerated at CSP-Solano and defendants Romero,

21    Abarra, and La were correctional officers at CSP-Solano.[1]   (ECF No. 14 at 2-3.)

22    ### B.    Inmate Appeal #CSP-S-15-00687

23        On March 29, 2015, plaintiff submitted a 602 Inmate/Parolee Appeal #CSP-S-15-00687.  A

24    stamp on the form shows it was received by the appeals office on April 6, 2015.  Plaintiff

25

26    ───────────────

27    [1] Plaintiff states that he was transferred to the California Medical Facility on July 1, 2015.
However, that fact is not relevant to the issue here – whether plaintiff exhausted his
administrative remedies prior to filing this suit in April 2015.

28

described the subject of that appeal as "Formal Reprimand of Off. Zueniga and Medical Care.[2]"

In his appeal, plaintiff described the March 6, 2015 incident when the door closed on him.

Plaintiff requested a formal reprimand of Officer Zueniga and to be "seen by a doctor

immediately to obtain adequate medical care for my injury."  (Ex. A to July 22, 2016 Decl. of V.

Estrella ("Estrella Decl.") (ECF No. 24-4 at 5-7.)

### C. CDCR Form 22

#### 1. Plaintiff's Request.

Attached to plaintiff's 602 appeal form was a CDCR Form 22 entitled "Inmate/Parolee

Request for Interview, Item or Service."  The form is dated March 7, 2015 and was addressed to

C.O. Abarra.  At the top of the form, was written "Urgent Matter."  In the box labelled "topic,"

plaintiff states "refusal of medical care."   In the section entitled, "Clearly State the Service or

Item Requested or Reason for Interview," plaintiff wrote, "On 3/6/15 I was smashed by front door

of building #1 coming in from legal mail by control booth Officer Zueniga it was 3:30 pm I was

refused medical care by C.O. [illegible] and control booth C.O. [illegible] around 6:30 pm

[illegible] were officially back in the building, C.O. Abarra says he saw incident."  (Ex. 1 to Pl.'s

Oppo. (ECF No. 31 at 10.[3])

#### 2. Abarra's Response

The "Staff Response" section of the form is signed by Abarra and dated March 7, 2015.

Unfortunately, the response is mostly illegible.  It begins with the statement, "Inmate Williams

was not smashed by the front door like he said he was as I saw [illegible] everything happen. . . ."

(Id.)

#### 3. Plaintiff's Request for Supervisor Review

On March 9, 2015, plaintiff filled out the portion of the form seeking a supervisor's

review of Abarra's response.  He stated that Abarra "claims I got smashed-in-door in different

---

[2] Plaintiff contends that he later learned the officer in the control booth was defendant Romero, not Officer Zueniga.

[3] Defendants also provided a copy of this document.  However, that copy is very faint so the court reviews the copy provided by plaintiff.  As far as the court can tell, the copies provided by the parties are identical.

manner." "However, Abarra did, in fact, call for medical care for me after I got caught in front-door and my request was denied. I still need physical therapy, pain medication, etc. because that incident has aggravated my preexisting injury. Please, respond promptly." (Id.)

**4. Supervisor's Review**

This section is blank. (Id.)

**D. Screening Level Response to Appeal  #CSP-S-15-00687 and CDCR Form 22**

In a document dated April 8, 2015 and entitled "Screening at the FIRST Level," plaintiff was informed that his appeal was rejected pursuant to California Code of Regulations, Title 15, § 3084.6(b)(7), because the appeal was "missing necessary supporting documents." Specifically, plaintiff was advised that his appeal did not include a staff complaint form as required. He was informed that he should complete CDC[4] Form 1858 to file a staff complaint and resubmit. IT was then noted that plaintiff's CDC Form 22 stated that he was requesting medical care. Plaintiff was advised "to file a 602HC and submit it to the medical appeals office regarding any medical condition or care." (Ex. B to Estrella Decl. (ECF No. 24-4 at 11).)

**E. Inmate Appeal #CSP-S-15-00827**

It appears that plaintiff resubmitted the same appeal form. According to plaintiff, he did so on April 8, 2015. (Pl.'s Stmt. (ECF No. 31 at 1).) The form shows the old appeal number - #CSP-S-15-00687 – crossed out and above it is written "15-00827." The form does not show a new date for submission by plaintiff. However, a new stamp from the appeals office shows that it was received there on April 22, 2015. Attached to plaintiff's resubmitted appeal is form CDCR 1858 entitled "Rights and Responsibility Statement." The document states that "anyone wishing to file an allegation of misconduct by a departmental peace officer must read, sign and submit the following statement." Plaintiff signed this document on April 8, 2015. (ECF No. 31 at 12-14.)

**F. Screening Level Response to Appeal  #CSPS-S-15-00827**

In a May 7, 2015 memorandum from V. Estrella, an Appeals Coordinator at CSP-Solano,

---

[4] The California Department of Corrections and Rehabilitation ("CDCR") was formerly known as the California Department of Corrections ("CDC"). The abbreviations are both used herein because some documents and forms still had the "CDC" designation in 2015.

1    to "All Concerned," Estrella states that the Hiring Authority reviewed CDCR FORM 602 Log #

2    CSP-S-15-00827 filed by Inmate Williams which was initially received in the appeals office at

3    SOL on April 22, 2015."  Estrella then stated that the "Hiring Authority determined that this

4    appeal should be processed as a routine appeal."  (ECF No. 31 at 17.)

5         In a document dated May 7, 2015 and titled "Screening at the FIRST Level," plaintiff was

6    advised that the action he requested should be addressed by the medical department.  (ECF No.

7    31 at 18.)

8         Plaintiff also attaches to his opposition copies of appeals he filed on November 30, 2015

9    and January 13, 2016.  (ECF No. 31 at 20-30.)

10   **III.    Analysis**

11       In order to exhaust his administrative remedies, plaintiff must have appealed his grievance to

12   the third level of review and received a response.  See Cal. Code Regs. tit. 15, § 3084.7.

13   Defendants have carried their burden of showing plaintiff failed to do so before he filed the

14   present action on April 10, 2015.  The burden thus shifts to plaintiff to "come forward with

15   evidence showing that there is something in his particular case that made the existing and

16   generally available administrative remedies effectively unavailable to him."  Albino v. Baca, 747

17   F.3d 1162, 1172 (9th Cir. 2014) (en banc).

18       Plaintiff argues that he did not have administrative appeal remedies available to him because

19   he was "directed to file a 602 health care appeal instead of a regular staff complaint 602."  (Pl.'s

20   Stmt. (ECF No. 31 at 2).)  However, that is not what he was instructed.  The form told plaintiff

21   that he should complete CDC Form 1858 to file a staff complaint and form 602HC to file a

22   medical appeal.  (Ex. B to Estrella Decl. (ECF No. 24-4 at 11).)

23       Plaintiff also argues that the response to his appeal was improper.  According to plaintiff, he

24   was not required to file a CDC Form 1858 in order to make a staff complaint.  The CDC Form

25   1858 is entitled "Rights and Responsibilities Statement."  (ECF No. 31 at 14.)  Pursuant to Cal.

26   Code Regs. tit. 15, § 3084.9(i), an inmate who files a staff complaint alleging misconduct by an

27   officer must include a "Rights and Responsibilities Statement."  Furthermore, plaintiff did just

28   that.  He resubmitted his 602 appeal, apparently on the day his first 602 appeal was rejected, with

10

1   a CDCR 1858 form.  On its face, the CDCR 1858 form is clear that it is required in order for a

2   staff complaint to be made.

3       Whether or not plaintiff filed forms and appeals after April 10, 2015, the date he filed the

4   present case, is not relevant to his failure to exhaust, which must occur before he files a case in

5   federal court.  See Vaden v. Summerhill, 449 F.3d 1047, 1051 (9th Cir. 2006) (a prisoner "may

6   initiate litigation in federal court only after the administrative process ends"); McKinney v.

7   Carey, 311 F.3d 1198, 1199 (9th Cir. 2002) (prisoner must exhaust available remedies before he

8   files his complaint; he may not do so during the course of the litigation).  Plaintiff has failed to

9   establish any grounds for his assertion that the administrative appeals process was unavailable to

10  him at the time he filed this action.  Therefore, this court finds summary judgment appropriate for

11  defendants.  However, plaintiff is advised that this court also recommends dismissal of this action

12  without prejudice to plaintiff's right to bring a new action on these same facts when, and if, he

13  has exhausted his administrative remedies.

14                           **CONCLUSION**

15      All parties to this action have not consented to the jurisdiction of a magistrate judge.

16  Therefore, the Clerk of the Court IS HEREBY ORDERED to assign a district judge to this case.

17      Because defendants have established that plaintiff failed to exhaust his administrative

18  remedies prior to filing this action, IT IS HEREBY RECOMMENDED that defendants' July 29,

19  2016 Motion for Summary Judgment be granted and this case be dismissed without prejudice.

20  See Vaden, 449 F.3d at 1051.

21      These findings and recommendations will be submitted to the United States District Judge

22  assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

23  after being served with these findings and recommendations, any party may file written

24  objections with the court and serve a copy on all parties. The document should be captioned

25  "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the

26  objections shall be filed and served within seven days after service of the objections.  The parties

27  ////

28  ////

are advised that failure to file objections within the specified time may result in waiver of the

right to appeal the district court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

Dated:  February 3, 2017

DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

DLB:9
DLB1/prisoner-civil rights/will0782.msj fr